UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------

NAFTALI ROSENBERG, *individually and on
behalf of all others similarly situated*,

          Plaintiff,

        v.

MCCARTHY, BURGESS & WOLFF, INC.,

          Defendant.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
21-CV-2199 (MKB)

MARGO K. BRODIE, United States District Judge:

 Plaintiff Naftali Rosenberg, individually and on behalf of all others similarly situated,

commenced the above-captioned putative class action against Defendant McCarthy, Burgess &

Wolff, Inc. on April 21, 2021, alleging that Defendant violated the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") by sending Plaintiff a debt collection letter seeking

$103.60 in unauthorized fees and other charges, thus misrepresenting the amount of Plaintiff's

debt.  (Compl. ¶¶ 27–30, Docket Entry No. 1.)  Defendant moves to dismiss the Amended

Complaint for lack of standing and failure to state a claim pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposes the motion.[1]

 For the reasons set forth below, the Court grants Defendant's motion and dismisses the

Amended Complaint without prejudice for lack of subject matter jurisdiction.

_____

[1]  (Am. Compl., Docket Entry No. 12; Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket
Entry No. 15; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 15-1;
Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 17; Def.'s Reply Mem. in Supp. of
Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 18.)

## I.  Background

Plaintiff is a New York State resident and a "consumer" as defined by the FDCPA.[2]

(Am. Compl. ¶¶ 7, 24.)  Defendant is a debt collection company and a "debt collector" as defined

by the FDCPA.  (*Id.* ¶¶ 8–9, 22, 26.)

Prior to June 19, 2020, Plaintiff incurred a debt obligation to Verizon Wireless

("Verizon") from "a mobile telephone debt" incurred for "personal, household or family

purposes."  (*Id.* ¶¶ 20, 23.)  Plaintiff alleges the debt obligation is "consumer-related" and

therefore a "debt" as defined by the FDCPA.  (*Id.* ¶ 25.)  Verizon initially contracted with MRS

BPO, L.L.C. d/b/a MRS Associates ("MRS") to collect the debt.  (*Id.* ¶¶ 21–22.)  On May 1,

2020, MRS "sent Plaintiff a collection letter" seeking a balance of $575.56, plus $57.55 in

"Verizon Collection Fees," for a total of $633.11.  (*Id.* ¶¶ 30–31; MRS Letter dated May 1, 2020,

annexed to Am. Compl. as Ex. B., Docket Entry No. 12-2.)  Verizon later contracted with

Defendant to collect the debt.  (Am. Compl. ¶¶ 21–22.)  Although the "express terms of the

governing contract only allow for one application of a collection fee," Defendant sent Plaintiff a

separate collection letter (the "Collection Letter") seeking the same balance of $575.56, plus the

new amount of $103.60 in "[f]ees and other charges," for a total of $679.16.  (*Id.* ¶¶ 27–29, 32;

Collection Letter dated June 19, 2020, annexed to Am. Compl. as Ex. A, Docket Entry No. 12-

1.)

Plaintiff alleges that Defendant "seeks to collect an amount that misrepresents the debt"

because Defendant "was not expressly authorized by the agreement" between Plaintiff and

Verizon or permitted by law to charge $103.60 in "excessive" fees.  (Am. Compl. ¶¶ 34–37.)  In

---

[2]  The Court assumes the truth of the factual allegations in the Amended Complaint for
the purposes of this Memorandum and Order.

addition, Plaintiff alleges that while "thes[e] fees are defined as 'Verizon Collection Fees,'" this amount "has not been spent on collection," as Defendant sent "only one letter," causing Plaintiff confusion "as to the amount of the account balance" and thus "an informational injury" that has "damaged" Plaintiff.  (*Id.* ¶¶ 38–43.)

Plaintiff alleges that Defendant (1) "falsely represent[ed] the true amount of the debt" in violation of 15 U.S.C. § 1692(e)(2)(A); (2) made "a false and deceptive representation" in violation of 15 U.S.C. § 1692e(10); (3) sought to collect $103.60 in "fees or other charges" that are "not expressly authorized" by Plaintiff's agreement with Verizon "or permitted by law" in violation of 15 U.S.C. § 1692f(1); and (4) falsely represented "the true amount of the debt" in violation of 15 U.S.C. § 1692g(a)(1).  (*Id.* ¶¶ 47, 52, 57.)  Plaintiff seeks statutory damages, actual damages, costs, and attorneys' fees.  (*Id.* at 11.)

## II.  Discussion

### a.  Standards of review

#### i.  Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it."  *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (per curiam) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that

showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted) (first quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010).  Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols. US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) (citing *Morrison*, 547 F.3d at 170); *Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020) (quoting *Tandon*, 752 F.3d at 243); *Fed. Deposit Ins. Corp. v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

### ii.   Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y.U.*, 9 F.4th 95, 106–107 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

4

Although all allegations contained in the Amended Complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

     **b.   Standing**

     Defendant argues that the Court should dismiss the Amended Complaint for lack of subject matter jurisdiction because, under the Supreme Court's recent holding in *TransUnion LLC v. Ramirez*, --- U.S. ---, ---, 141 S. Ct. 2190, 2203 (June 25, 2021), Plaintiff has failed "to articulate a particularized concrete harm necessary to establish Article III standing." (Def.'s Mem. 9–16.) In addition, Defendant argues that the fact that Plaintiff "may be obligated to engage in protracted litigation to free himself from the obligation to pay Verizon's collection fee" does not establish standing because "Plaintiff has asserted no intention of paying the debt" and "this is an assertion of a potential risk of future harm." (Def.'s Reply 7 n.2.)

     Plaintiff argues that recent cases confirm that 15 U.S.C. §§ 1692e and 1692f "confer substantive rights the violation of which, in and of itself, constitutes concrete harm under Article III."[3] (Pl.'s Opp'n 6–12.) In addition, Plaintiff argues that "Defendant wrongfully imposed additional collection charges by referring the debt to two different collection agencies, thereby triggering the collection fee provision in the agreement at issue," and the "liabilities imposed" due to Defendant's wrongful conduct also give rise to standing. (*Id.* at 13–14.)

     "'Standing to sue is a doctrine' that 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 183–84 (2d Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). In order to show standing, a plaintiff must establish three things: (1) an "injury in fact — an invasion of a legally protected interest which is . . . concrete and particularized

---

[3] Plaintiff does not argue that he has standing under 15 U.S.C. § 1692g(a).

and . . . actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) redressability of the injury "by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotation marks omitted); *see also Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (same); *Pincus v. Nat'l R.R. Passenger Corp.*, 581 F. App'x 88, 89 (2d Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–65) (describing the three elements of standing); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("[A] plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." (citing *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009))). "An injury in fact must be 'particularized,' and it must be 'concrete.'" *Harty*, 28 F.4th at 442 (quoting *Spokeo, Inc.*, 578 U.S. at 340). "[S]tanding is required for subject matter jurisdiction." *James v. Willis*, No. 21-501, 2022 WL 481812, at *1 (2d Cir. Feb. 17, 2022) (citing *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016)). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)); *see Otrompke v. The First Dep't Comm. on Character & Fitness*, No. 20-4107, 2021 WL 5764221, at *1 (2d Cir. Dec. 6, 2021) ("A district court lacks jurisdiction 'when . . . the plaintiff lacks constitutional standing to bring the action.'" (quoting *Cortlandt St. Recovery Corp.*, 790 F.3d at 417)).

The Court dismisses the Amended Complaint for lack of subject matter jurisdiction because Plaintiff has failed to allege an injury in fact sufficient to confer standing. Plaintiff argues that Defendant violated FDCPA provisions that "confer substantive rights the violation of which, in and of itself, constitutes concrete harm under Article III." (Pl.'s Opp'n 6–12.)

However, as Defendant argues, the Supreme Court's decision in *TransUnion* forecloses this argument. In *TransUnion*, the Supreme Court clarified that it has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC*, --- U.S. at ---, 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341). Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* (quoting *Spokeo*, 578 U.S. at 341).

Plaintiff argues that recent decisions confirm that FDCPA §§ 1692e and 1692f confer substantive rather than procedural rights, the violation of which confers standing. In support, Plaintiff first cites pre-*TransUnion* cases in which courts analyzing standing under the FDCPA reached this conclusion. (*See* Pl.'s Opp'n 6–8.) However, in view of *TransUnion*, Plaintiff's reliance on pre-*TransUnion* decisions is unpersuasive. Plaintiff next cites *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 997 F.3d 436, 446 (2d Cir. 2021), in which the Second Circuit held that the violation of New York statutes protecting substantive rights conferred standing without any additional showing of harm. (*Id.* at 8.) However, the Second Circuit recently revisited and reversed its decision in *Maddox*, acknowledging that "*TransUnion* established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm: 'No concrete harm; no standing.'" *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) (quoting *TransUnion*, --- U.S. at ---, 141 S. Ct. at 2214). Finally, Plaintiff cites post-*TransUnion* cases in which courts outside this Circuit found that FDCPA violations constitute substantive harms, rather than procedural harms, sufficient to establish concrete injury. (*See* Pl.'s Opp'n 11–12.) However, Plaintiff's reliance on these cases is also unpersuasive, as the Court is bound by the Second Circuit's reconsidered

7

decision in *Maddox*.  In *Maddox*, the Second Circuit explained that despite its prior holding that "[t]he violation of a substantive right . . . constitutes a concrete injury in fact sufficient to establish Article III standing without any additional showing[,]" *TransUnion* clarified . . . that the type of harm that a statute protects against is of little (or no) import" — "plaintiffs must show that the statutory violation caused them a concrete harm, regardless of whether the statutory rights violated were substantive or procedural." *Maddox*, 19 F.4th at 64–65 & n.2; *Kola v. Forster & Garbus LLP*, No. 19-CV-10496, 2021 WL 4135153, at *5 (S.D.N.Y. Sept. 10, 2021) (noting that, after *TransUnion*, "courts may not assume that the existence of a statutory prohibition or obligation automatically elevates that prohibition or obligation to a harm that is concrete under Article III").

In line with *TransUnion* and the Second Circuit's recent decision in *Maddox*, Plaintiff next argues that "it is widely understood that violations of [FDCPA] § 1692e are akin to common law actions for fraud or negligent misrepresentation."  (Pl.'s Mem. 9–10); *see TransUnion*, --- U.S. at ---, 141 S. Ct. at 2204 (noting that "intangible harms can . . . be concrete," including "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts"); *Maddox*, 19 F.4th at 64–65 & n.2 (noting that the type of harm a statute protects against "is of little (or no) import; what matters is 'whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts'" (quoting *TransUnion*, --- U.S. at ---, 141 S. Ct. at 2204)).  As Defendant notes, Plaintiff's counsel raised this same argument in *Kola v. Forster & Garbus LLP*, No. 19-CV-10496, 2021 WL 4135153, at *6–7 (S.D.N.Y. Sept. 10, 2021).  (Def.'s Reply 5–6.)

Under New York law, a claim for fraudulent misrepresentation "requires a showing that

'(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Spinelli v. NFL*, 903 F.3d 185, 209 (2d Cir. 2018) (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006)).  A claim for negligent misrepresentation requires "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *ICD Cap., LLC v. Codesmart Holdings, Inc.*, 842 F. App'x 705, 706 (2d Cir. 2021) (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)).  The *Kola* court found that the mere receipt of "a letter from a debt collector that was confusing or misleading as to the amount owed does not demonstrate a harm closely related to fraudulent or negligent misrepresentation" when the plaintiff did not rely upon those misrepresentations.  *Kola*, 2021 WL 4135153, at *7.  As Defendant argues, Plaintiff "fails to allege that he relied in any way upon the representations" in the Collection Letter.  (Def.'s Reply 7); *TransUnion*, --- U.S. at ---, 141 S. Ct. at 2214 ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020))).

Finally, Plaintiff argues that his contractual liability for additional collection fees wrongfully charged by Defendant constitutes concrete harm.  (Pl.'s Opp'n 13–14.)  In support, Plaintiff argues that Defendant "wrongfully imposed additional collection charges by referring the debt to two different collection agencies, thereby triggering the collection fee provision in the agreement at issue," creating "a liability that Plaintiff is subject to, and which Plaintiff cannot escape without resort to protracted litigation."  (*Id.* at 13.)  Plaintiff relies on *Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258 (11th Cir. 2006), to argue that he has "suffered a direct

9

injury in the form of liability for a debt [he] does not owe, which can ultimately be traceable to Defendant's conduct," and "any traceability determinations must be deferred" until "discovery has been had on this critical issue." (*Id.* at 13–14.) Defendant contends that Plaintiff's argument "fails to account for the fact that Plaintiff has asserted no intention of paying the debt" and that it is also "an assertion of a potential risk of future harm," which is "insufficient to give rise to standing in an action for damages" under *TransUnion*. (Def.'s Reply 7 n.2.) In *Via Mat Int'l S. Am. Ltd.*, Lespan, a currency exchange house, owned bank notes valued at $2.7 million. 446 F.3d at 1260. Lespan hired Via Mat to transport and insure the bank notes from Montevideo to London. *Id.* During the transport, Via Mat failed to file the necessary Customs form for the notes, and Customs agents seized them. *Id.* Lespan reached an agreement with Customs, and Customs released the funds to Lespan, minus $500,000. *Id.* at 1261. Via Mat agreed to reimburse Lespan the $500,000 retained by Customs, and sought to recover the funds through a judicial forfeiture proceeding. *Id.* The court held that "[t]he economic harm to a party with a possessory interest in seized property, imposed by virtue of its liability to the owner of such property, can constitute a palpable injury sufficient to confer standing under Article III." *Id.* at 1263. The court concluded that although Via Mat was not the owner of the notes, it had a possessory interest in them when Customs seized them, and therefore suffered a "direct, substantial economic injury due to its liability to Lespan for any of the property the Government did not return to [Lespan]." *Id.*

Unlike *Via Mat Int'l S. Am. Ltd.*, Plaintiff did not suffer — and has not alleged — an economic harm arising from a possessory interest in seized property. Rather, Plaintiff's only alleged harm is an informational injury, which courts have found insufficient to confer standing in the FDCPA context. *See, e.g.*, *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899–900 (7th

Cir. 2020) (finding no concrete injury traceable to false representation in letter and mere violation of FDCPA insufficient), *cert. denied*, 142 S. Ct. 313 (Oct. 4, 2021); *Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544, 545–47 & n.2 (9th Cir. 2020) (stating that the doctrine of informational injury does not apply to FDCPA violations, finding that the plaintiff had not alleged actual harm or a material risk of harm to the interests protected by the FDPCA, and noting that "[w]ithout more, confusion does not constitute an actual harm to [the appellant's] concrete interests"); *Cooper v. Atl. Credit & Fin., Inc.*, 822 F. App'x 951, 954–55 (11th Cir. 2020) (finding that the plaintiff "ha[d] not alleged an injury-in-fact sufficient to confer standing" where she merely alleged that debt collection letters violated the FDCPA and left her confused about her statutory rights and observing that the plaintiff did not allege that the letter caused her to take or refrain from taking any action or that she suffered any financial, legal, or other harm beyond the alleged statutory violations).

In addition, as Defendant argues, Plaintiff's theory that Defendant subjected him to a liability that Plaintiff has not alleged he intends to pay presents only a risk of future harm, which is insufficient to confer standing in a suit for damages under *TransUnion*. *TransUnion*, --- U.S. at ---, 141 S. Ct. at 2210 ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."); *see also Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022) ("[A]s the Supreme Court clarified in *TransUnion*, a risk of harm qualifies as a concrete injury only for claims for 'forward-looking, injunctive relief to prevent the harm from occurring.'" (quoting *TransUnion*, --- U.S. at ---, 141 S. Ct. at 2210)).

Accordingly, Plaintiff has failed to allege an injury-in-fact sufficient to confer Article III standing, and the Court dismisses the Amended Complaint without prejudice for lack of subject

matter jurisdiction.

      **c.**   **Plaintiff has not plausibly alleged a "debt" under the FDCPA**

Even assuming the Court had subject matter jurisdiction over Plaintiff's claims, Plaintiff

has failed to plausibly allege a "debt" under the FDCPA.

Defendant argues that Plaintiff fails to state an FDCPA claim because he has not

plausibly alleged a "debt" as defined under 15 U.S.C. § 1692a(5), as his allegations merely

"parrot[] the statutory definition" and are asserted "[u]pon information and belief," despite the

facts being within Plaintiff's control.  (Def.'s Mem. 17–18.)  In addition, Defendant argues that

Plaintiff "speculates that because the phone at issue is mobile, Plaintiff . . . used it exclusively to

take personal calls," however Plaintiff has not alleged facts to support this contention and "could

just as well have . . . used it exclusively in connection with a business venture."  (Def.'s Reply 8;

Def.'s Mem. 17.)

Plaintiff argues that he has sufficiently alleged a consumer debt under the FDCPA

because his allegation that the debt is "a mobile phone debt from Verizon" supports "the

reasonable inference . . . that the phone is used for 'personal, family, or household purposes.'"

(Pl.'s Opp'n 25.)  In support, Plaintiff argues that other courts "have validated similar allegations

on a motion to dismiss regarding cell phones."  (*Id.* (first citing *Butto v. Collecto Inc.*, 290 F.R.D.

372, 381–83 (E.D.N.Y. 2013); and then citing *Hering v. Halsted Fin. Servs., LLC*, No. 17-CV-

1439, 2017 WL 4355626, at *8–9 (M.D. Fla. Oct. 2, 2017)).)

The FDCPA protects debtors in connection with the collection of certain debts, but not

others.  The Act "defines a 'debt' as 'any obligation or alleged obligation of a consumer to pay

money arising out of a transaction in which the money, property, insurance, or services which are

the subject of the transaction are primarily for personal, family, or household purposes, whether

or not such obligation has been reduced to judgment.'"  *Beauvoir v. Israel*, 794 F.3d 244, 247

(2d Cir. 2015) (quoting 15 U.S.C. § 1692a(5)); *see Eades v. Kennedy, PC Law Offices*, 799 F.3d

161, 170 (2d Cir. 2015) (quoting same); *Scarola Malone & Zubatov LLP v. McCarthy, Burgess*

*& Wolff*, 638 F. App'x 100, 102 (2d Cir. 2016) ("While the FDCPA protects consumers from

'abusive debt collection practices,' 15 U.S.C. § 1692(e), it 'applies only in instances where a

debt collector attempts to collect a "debt" within the meaning of the Act.'" (quoting

*Degrosiellier v. Solomon & Solomon, P.C.*, No. 00-CV-1065, 2001 WL 1217181, at *3

(N.D.N.Y. Sept. 27, 2001))).

 Plaintiff has failed to plausibly allege that his debt falls within the scope of the FDCPA's

protection.  Plaintiff's only allegations regarding the nature of the debt are that, "[u]pon

information and belief, the original subject obligation arose out of a mobile telephone debt" and

"[t]he subject debt was incurred by Plaintiff solely for personal, household or family purposes."

(Am. Compl. ¶ 23.)  These allegations do not provide the necessary factual support to sustain

Plaintiff's claims because they are mere conclusory statements that repeat the statutory definition

of "debt" without pleading any facts from which the Court can ascertain or infer "the asserted

basis for the obligation to pay."  *Scarola Malone & Zubatov LLP*, 638 F. App'x at 102–03

(quoting *Beauvoir*, 794 F.3d at 248) (affirming dismissal of FDCPA claims where the plaintiff

alleged his debt arose from "transactions related to a business telephone account" and was thus a

commercial debt and finding that the plaintiff's claim that the debt was incurred "for personal,

family or household purposes" was a "mere conclusory statement[] not supported by facts from

which the inference could be reasonably drawn that collection efforts arose from a consumer

transaction").

 Numerous courts have concluded that plaintiffs who recite the statutory definition of

"debt" rather than plead facts regarding the debt's nature have not adequately pled an FDCPA

claim. *See Garcia v. Primary Fin. Servs.*, 605 F. App'x 418, 418–19 (5th Cir. 2015) (affirming

dismissal of claims based on identical language, and reiterating prior holding that "recitation of a

key statutory phrase, without any accompanying factual content, was merely a threadbare recital

of a cause of action" (alteration omitted) (quoting *Garcia v. Jenkins Babb, LLP*, 569 F. App'x

274, 276 (5th Cir. 2014)); *Piper v. Meade & Assocs., Inc.*, 282 F. Supp. 3d 905, 912 (D. Md.

2017) ("The mere recitation of the statutory language that the debt was 'incurred as a financial

obligation that was primarily for personal, family or household purposes and is therefore a debt

as that term is defined by 15 U.S.C. § 1692a(5),' constitutes 'a legal conclusion couched as a

factual allegation' and the [c]ourt is 'not bound to accept it as true.'" (alteration omitted)

(quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))); *Shetty v. Lewis*, No. 16-CV-3112, 2017

WL 1177993, at *6 (N.D. Cal. Mar. 30, 2017) (dismissing FDCPA claim where the plaintiff

"allege[d] conclusorily that 'the debt evidenced by the purported [n]ote and deed of trust arise

[sic] out of a loan transaction entered primarily for personal, family, or household purposes . . .

and consistent with 15 U.S.C.A. § 1692a(5)" (third alteration in original)); *Billie v. Credit*

*Collection Servs., Inc.*, No. 16-CV-786, 2017 WL 396536, at *3 (D. Conn. Jan. 30, 2017)

(collecting cases dismissing FDCPA claims based on similar allegations, and acknowledging that

"there is no indication on the face of the [c]omplaint that the [c]ourt has reason to believe that the

alleged debt" was not covered but dismissing the claim because "the Second Circuit made clear

that the allegation that a transaction was 'primarily for personal, family or household

purposes[,]' as required by the FDCPA, is 'not entitled to a presumption of truth'" (citing

*Scarola Malone & Zubatov LLP*, 638 F. App'x at 102–03)); *Sanon-Lauredant v. LTD Fin.*

*Servs., L.P.*, No. 15-CV-6529, 2016 WL 3457010, at *2 (D.N.J. June 22, 2016) (dismissing

14

FDCPA claim because the "plaintiff has merely repeated the language of the statute" and collecting cases); *Jenkins v. Santiago*, No. 11-CV-1082, 2012 WL 3242354, at *3 (M.D. Fla. Aug. 8, 2012) (dismissing FDCPA claim based on allegation that debt was "incurred primarily for personal, family, or household purposes" because "[t]his is merely a reiteration of the statutory definition"); *Nicholas v. CMRE Fin. Servs., Inc.*, No. 08-CV-4857, 2009 WL 1652275, at *2 (D.N.J. June 11, 2009) (dismissing as "conclusory" and "devoid of any factual detail" claims based on allegations that "addresse[d] [the plaintiff's] debt in language derived from 15 U.S.C. § 1692a(5) as 'a financial obligation arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes'").

In addition, although Plaintiff argues that his allegation that the debt "arose out of a mobile phone debt" permits the reasonable inference that Plaintiff used the phone for "personal, family, or household purposes," (Pl.'s Opp'n 25), as Defendant argues, a mobile phone can be used for personal or business purposes, (Def.'s Reply 8), and Plaintiff has not alleged any facts that would support the inference that he used the mobile phone for one purpose or the other. *See Jennings v. Cont'l Serv. Grp., Inc.*, 239 F. Supp. 3d 662, 667–68 (W.D.N.Y. 2017) (rejecting argument that court should infer debt was consumer debt based on allegation that the defendant "was primarily engaged in the collection of student loan debt" because "it does not follow that any calls to [the plaintiff] related to student debt"). Although Plaintiff argues that other courts "have validated similar allegations on a motion to dismiss regarding cell phones," neither of the cases Plaintiff cites involved a motion to dismiss. (Pl.'s Opp'n 25.) In *Butto v. Collecto Inc.*, 290 F.R.D. 372, 381–33 (E.D.N.Y. 2013), which concerned a Rule 23 class certification, the defendant argued that "merely because an account is a Verizon Wireless account does not mean

15

that it is consumer debt for purposes of the FDCPA." *Id.* at 381.  The court assumed, for the purposes of finding numerosity of the class, that "a significant portion of the 18,949 letters were sent to Verizon Wireless customers and concerned personal debt." *Id.*  In *Hering v. Halsted Fin. Servs., LLC*, No. 17-CV-1439, 2017 WL 4355626, at *4 (M.D. Fla. Oct. 2, 2017), the court granted default judgment on the plaintiff's FDCPA claim based on the allegations that the defendant "called [the plaintiff] to collect an outstanding debt" and "that this alleged debt was for 'personal, family, or household purposes.'" *Id.*  However, as discussed above, in the Second Circuit, such allegations are not entitled to a presumption of truth and are insufficient to establish that a debt was a consumer debt.

Accordingly, Plaintiff's allegations are insufficient to state a claim under the FDCPA.[4]

## III.  Conclusion

For the reasons stated above, the Court grants Defendant's motion and dismisses the Amended Complaint without prejudice for lack of subject matter jurisdiction.  The Clerk of Court is respectfully directed to close this case.

Dated: August 1, 2022
      Brooklyn, New York

SO ORDERED:

s/ MKB

_____

MARGO K. BRODIE
United States District Judge

---

[4] The Court declines to address Defendant's argument in the alternative that the underlying debt collection contract permitted the collection of the fees in this case.  (*See* Def.'s Mem. 5–9.)